UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| LAW OFFICES OF BEN F. BARCUS & ASSOCIATES, PLLC,<br><br>Plaintiff,<br><br>v.<br><br>KARI I. LESTER, TODD KUTZKE, OGDEN MURPHY WALLACE, PLLC,<br><br>Defendants. | CASE NO. C15-5210 BHS<br><br>ORDER GRANTING COUNTER DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, DENYING OTHER MOTIONS AS MOOT, AND REMANDING |

This matter comes before the Court on Defendants Todd Kutzke and Kari Lester's ("Lester") motion for summary judgment (Dkt. 21), Defendant Ogden Murphy Wallace, PLLC's ("Ogden Murphy") motion for summary judgment (Dkt. 36), Lester's motion to strike surreply (Dkt. 69), the Court's request for responses regarding supplemental jurisdiction (Dkt. 71), the parties' responses (Dkts. 72, 74), and Counter Defendants Ben Barcus, Nurhan Karakas Barcus, and Law Offices of Ben F. Barcus & Associates, PLLC's motion for summary judgment (Dkt. 75). The Court has considered the pleadings filed in support of and in opposition to the motions and the remainder of the file and hereby rules as follows:

ORDER - 1

# I. PROCEDURAL HISTORY

On October 23, 2014, Plaintiff Law Offices of Ben F. Barcus & Associates, PLLC ("Barcus Law") filed a complaint against Lester and Ogden Murphy in Pierce County Superior Court for the State of Washington. Dkt. 1-3. Barcus Law asserts causes of action for interference with business relationships, conversion, breach of loyalty, breach of fiduciary duties, and a violation of the Washington Consumer Protection Act, RCW Chapter 19.86 ("CPA"). *Id*. On March 13, 2015, Lester filed an amended answer and asserted counterclaims against Counter Defendants Ben Barcus, Nurhan Karakas Barcus, and Barcus Law (collectively "Barcus") for sexual harassment in violation of state law, intentional interference with business expectancy, violations of the CPA, defamation, breach of contract and wrongful withholding of wages, and a violation of the Equal Pay Act, 29 U.S.C. § 206 ("EPA"). Dkt. 1-2.

On March 3, 2015, Barcus removed the matter to this Court based on subject matter jurisdiction over Lester's EPA claim. Dkt. 1.

On October 29, 2015, Lester and Ogden Murphy filed motions for summary judgment seeking dismissal of Barcus Law's state law claims. Dkt. 21 & 36. On November 16, 2015, Barcus Law responded. Dkt. 39. On November 20, 2015, Lester and Ogden Murphy replied. Dkts. 55 & 57. On November 25, 2015, Barcus Law filed a surreply. Dkt. 64. On November 30, 2015, Lester filed a motion to strike Barcus Law's surreply. Dkt. 69.

On January 26, 2016, the Court requested responses regarding exercising supplemental jurisdiction over the state law claims. Dkt. 71. On February 5, 2016, both parties responded. Dkts. 72, 74.

On February 5, 2016, Barcus filed a motion for summary judgment on Lester's EPA claim. Dkt. 75. On February 29, 2016, Lester responded. Dkt. 79. On March 4, 2016, Barcus replied. Dkt. 82.

## II. DISCUSSION

Lester alleges that "[d]uring 2013 and 2014 [she] was paid a base salary and bonuses at rates lower than the male associate attorney performing the same work." Dkt. 1-2, ¶ 73. Barcus moves for summary judgment on this claim. Dkt. 75. In her response, Lester implicitly drops her claim based on 2013 wages stating that her "EPA claim . . . is based upon the lower base pay she received from January 1 through September 12, 2014 when her male comparator earned more compensation than she did." Dkt. 79 at 4. Even if Lester did not narrow her claim, Barcus would most likely be entitled to summary judgment on the 2013 wage claim because Lester earned more than twice the alleged comparator. Dkt 81 at 4.[1]

**A.    Summary Judgment Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

---

[1] While the Court will endeavor to respect the parties' desire to keep actual salary figures confidential, some figures must necessarily be disclosed.

1  The moving party is entitled to judgment as a matter of law when the nonmoving party

2  fails to make a sufficient showing on an essential element of a claim in the case on which

3  the nonmoving party has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317,

4  323 (1986).  There is no genuine issue of fact for trial where the record, taken as a whole,

5  could not lead a rational trier of fact to find for the nonmoving party.  *Matsushita Elec.*

6  *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must

7  present specific, significant probative evidence, not simply "some metaphysical doubt").

8  *See also* Fed. R. Civ. P. 56(e).  Conversely, a genuine dispute over a material fact exists

9  if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or

10 jury to resolve the differing versions of the truth.  *Anderson v. Liberty Lobby, Inc.*, 477

11 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d

12 626, 630 (9th Cir. 1987).

13        The determination of the existence of a material fact is often a close question. The

14 Court must consider the substantive evidentiary burden that the nonmoving party must

15 meet at trial – e.g., a preponderance of the evidence in most civil cases.  *Anderson*, 477

16 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630.  The Court must resolve any factual

17 issues of controversy in favor of the nonmoving party only when the facts specifically

18 attested by that party contradict facts specifically attested by the moving party.  The

19 nonmoving party may not merely state that it will discredit the moving party's evidence

20 at trial, in the hopes that evidence can be developed at trial to support the claim.  *T.W.*

21 *Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255).  Conclusory,

22

nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

**B.   EPA**

In general, to assert a claim under the EPA, 29 U.S.C. § 206(d), plaintiff must establish a prima facie case of wage discrimination; then, the burden shifts to defendants to prove one of four statutorily available affirmative defenses. *See generally Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974).

**1.   Wage Variation**

"The Act does not prohibit variations in wages; it prohibits *discriminatory* variations in wages." *Hein v. Oregon Coll. of Educ.*, 718 F.2d 910, 916 (9th Cir. 1983).

> Under the EPA, the term "wages" generally includes all payments made to [or on behalf of] an employee as remuneration for employment. The term includes all forms of compensation irrespective of the time of payment, whether paid periodically or deferred until a later date, and whether called wages, salary, profit sharing, expense account, monthly minimum, bonus, uniform cleaning allowance, hotel accommodations, use of company car, gasoline allowance, or some other name.

29 C.F.R. § 1620.10.

In this case, "Lester does not claim that the bonus system was responsible for the pay differential, but relies on the fact that she had a much lower base for her EPA claim." Dkt. 79 at 12. Lester's lower base pay argument is contrary to the accepted definition of wages under the EPA and has been repeatedly rejected. *See*, *e.g.*, *Gallagher v. Kleinwort Benson Gov't Sec., Inc.*, 698 F. Supp. 1401, 1404 (N.D. Ill. 1988) ("under this definition, any bonus received by a trader will be included within his or her wage."). Thus, the Court will compare the total compensation for 2014.

1    It is undisputed that Lester earned less than her proposed comparator, Paul
Lindenmuth, in 2014.  Whether the Court accepts Lester's contention that her total wages were $99,206.51 or Barcus's contention that Lester's total wages were $101,634.72, both amounts are less than Mr. Lindenmuth's 2014 compensation of $122,922.41.  Although these numbers speak for themselves, Barcus argues that "Lester fails to make a threshold showing that she received less compensation than Paul Lindenmuth." Dkt. 81 at 3.  This assertion is completely without merit.  While there may be valid reasons for the pay disparity, such as Lester's five-week vacation, it cannot be contested that a total compensation disparity existed.  Therefore, Lester received approximately 20% less than her proposed male comparator.

**2.    Prima Facie Case**

Under the EPA, a plaintiff must establish a prima facie case by showing that the employer pays different wages to employees of the opposite sex for substantially equal work.  *Id.* at 195.  To be "substantially equal," the jobs need not be identical, but must require similar skills, effort and responsibility performed under similar conditions.  29 U.S.C. § 206(d); *Gunther v. County of Washington*, 623 F.2d 1303, 1309 (9th Cir. 1979), *aff'd on other grounds*, 452 U.S. 161 (1981).  A plaintiff need only show that "the jobs [being compared] are substantially equal, not necessarily that they are identical."  *Spaulding v. Univ. of Washington*, 740 F.2d 686, 697 (9th Cir. 1984), *overruled on other grounds by Atonio v. Wards Cove Packing Co.*, 810 F.2d 1477 (9th Cir. 1987).  "In assessing a plaintiff's claim of substantial equality between jobs, a court should rely on

actual job performance and content rather than job descriptions, titles, or classifications."
*Forsberg v. Pacific Northwest Bell Tel. Co.*, 840 F.2d 1409, 1414 (9th Cir. 1988).

In this case, Lester asserts that she and Mr. Lindenmuth performed substantially equal work. Dkt. 79 at 5–7. While Lester concedes that, at the time she was hired, Mr. Lindenmuth was a more experienced attorney, she contends that by 2014 their skills and responsibilities were substantially similar. Dkt. 78, Declaration of Kari Lester, ¶¶ 2–3. Lester declares that:

> During [my] final five years at the Barcus Firm, my skill, effort, responsibility, and working conditions were substantially similar to those of [my] male comparator, Mr. Lindenmuth. In fact, by 2013, Mr. Barcus asked [me] to take over some of Mr. Lindenmuth's larger cases due to [my] own personal accomplishments and track record, which were measurably more successful in the last full three years of [my] employment than Mr. Lindenmuth's.

*Id.*, ¶ 5. Barcus disagrees with Lester and contends that "Ms. Lester and Mr. Lindenmuth are not equals in experience or the type of work that they performed." Dkt. 76, Declaration of Ben Barcus ("Barcus Dec."), ¶ 6. Barcus casts Mr. Lindenmuth as an appellate and complex tort attorney whereas he claims Lester mostly worked on simple tort and admitted liability cases. *Id.*, ¶ 5. This evidence shows that a question of fact exists on this issue. Viewing the evidence in the light most favorable to Lester, she has established that she and Mr. Lindenmuth were experienced associates working in similar areas of law. Therefore, the Court denies Barcus's motion on this issue.

### 3. Affirmative Defenses

Once a plaintiff establishes a prima facie case, the burden of persuasion shifts to the employer to show that the wage disparity is permitted by one of the four statutory exceptions to the EPA: "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex."  29 U.S.C. § 206(d)(1); *Maxwell v. City of Tucson*, 803 F.2d 444, 446 (9th Cir. 1986).  These exceptions are affirmative defenses, which the employer must plead and prove.  *Kouba v. Allstate Ins. Co.*, 691 F.2d 873, 875 (9th Cir. 1982).

In this case, Barcus has established two of these defenses.  First, it is undisputed that Barcus implemented an explicit bonus structure, which is a system that measures earning based on quantity.  *See* Barcus Dec., Exh. C.  While Barcus retained some discretion in awarding bonuses for certain types of cases, that fact is immaterial in this case because Lester received a significantly higher bonus percentage than Mr. Lindenmuth.  In 2014, "Lester generated $306,484 in fees and was paid 22.12% of that revenue in bonuses or $67,784" whereas "Mr. Lindenmuth generated $588,569 in total fees and was paid 13.27% of those fees or $80,422."  Dkt. 83, Second Declaration of Ben Barcus, ¶ 6.  If anything, Mr. Lindenmuth has a basis for unequal pay.  Regardless, Lester has failed to present evidence that undermines the fact that she received almost twice the percentage of her generated fees as Mr. Lindenmuth.  Therefore, the Court concludes as a matter of law that Barcus has established this affirmative defense.

Second, Barcus contends that the disparity in compensation can also be accounted for based on facts other than sex.  For example, Barcus asserts, and Lester does not

dispute, that Lester took a five-week vacation during 2014, which provides some explanation for the disparity in total fees generated. Barcus also contends that Lester was devoted to finding a new job instead of doing her job during the later months of her employment. While there is some evidence in support of Barcus's position, other than Barcus's declaration, there is no actual evidence that Lester underperformed during the latter weeks of her employment. Regardless, Lester's vacation supports the conclusion that the 2014 wage disparity was based on a shorter work year rather than any discriminatory motive. Therefore, the Court grants Barcus's motion for summary judgment on Lester's EPA claim.

**C.    Supplemental Jurisdiction**

The Court has already expressed its concerns with retaining supplemental jurisdiction over the parties' state law claims. Now that the lone federal claim is dismissed, the Court has one more reason to decline to retain jurisdiction. 28 U.S.C. § 1367(c)(3). In light of this, the previous concerns, and the parties' responses, the Court concludes that the exercise of supplemental jurisdiction is inappropriate and remands the matter. All other pending motions are denied as moot.

**D.    Sealed Documents**

The parties have filed numerous documents under seal without seeking permission of the Court. With regard to the documents relating to the EPA summary judgment motion, the parties are directed to comply with Local Rules, W.D. Wash. LCR 5(g) and meet the higher burden for sealing documents related to dispositive motions. With regard to the other documents under seal, the parties must comply with the local rule and are

only required to meet the lower burden for general motions because all other motions are denied as moot. Failure to respond or file appropriate motions by April 22, 2016, will result in unsealing of the documents.

### III. ORDER

Therefore, it is hereby **ORDERED** that Barcus's motion for summary judgment (Dkt. 75) is **GRANTED** and Lester's EPA claim is **DISMISSED**; all other pending motions are **DENIED as moot**; the Clerk shall **REMAND** the matter to Pierce County Superior Court and close this case; and the parties shall comply with Local Rules, W.D. Wash. LCR 5(g) as stated herein.

Dated this 7th day of April, 2016.

BENJAMIN H. SETTLE
United States District Judge